UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Criminal No. 07-131 (JR) |
| v. : | |
| : | |
| : | |
| JAMES BECTON and : | |
| CHRISTOPHER BECTON, : | |
| Defendants. : | |

**GOVERNMENT'S REPLY TO DEFENDANT BECTON'S AMENDED OPPOSITION
TO GOVERNMENT'S NOTICE OF INTRINSIC EVIDENCE**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully files this Reply brief in opposition to defendant James Becton's second round of objections to the Government's Notice of Intrinsic Evidence (document #136). For the reasons set forth below and for any additional reasons to be argued at the hearing on this matter, defendant's objections should be overruled.

1. The Government's Notice of Intrinsic Evidence gave the defense detailed notice of anticipated testimony that would concern the formation of the charged conspiracy as well as examples of conduct undertaken by the defendants and their co-conspirators in furtherance of the charged conspiracy. The Notice of Intrinsic Evidence also cited the substantial body of caselaw authority – authority that defendant Becton himself acknowledges – that provides that evidence of prior acts that are direct evidence of the conspiracy and/or the defendant's entry into the conspiracy are admissible at trial. (Notice of Intrinsic Evidence at 16-19).

2. Defendant nevertheless attacks several individual aspects of the noticed proof. First, in a narcotics conspiracy case, defendant seeks to preclude evidence that he and a co-conspirator

obtained 4 kilograms of cocaine in 2006, during the conspiracy's peak. (Def.'s Amended Opp. ¶ 15). Defendant similarly seeks to exclude testimony that he possessed nearly $24,000 in cash in 2001, during the charged conspiracy. (*Id.* ¶ 18).[1] Those objections are simply meritless and should be denied.

    3.   Defendant also seeks to preclude other evidence during the time frame of the charged conspiracy, specifically that in the year 2000, defendant James Becton and Willie Best recruited a co-conspirator to murder a man named Damian Campbell, who Becton and Best believed to be a law enforcement informant, and that same year, defendant recruited other members of the conspiracy to rob a rival drug dealer. (Def.'s Amended Opp. ¶ 5, 17). Defendant also seeks to exclude anticipated testimony about an effort by defendant James Becton to acquire a significant amount of cocaine in California in 2003, which resulted in a shoot-out with the California suppliers. (*Id.* at ¶ 6). Defendant acknowledges a "general presumption" that events occurring during the time of the charged conspiracy such as these are "generally admissible"; defendant, however, grounds his objection on the contention that the events will not be supported by an "appropriate level of evidence." (*Id.* at ¶ 7). Defendant is mistaken. The two incidents from the year 2000 will be described by the individual whom Willie Best and James Becton personally recruited to do the "hit," and who personally was recruited to commit the robbery. Medical records will further corroborate the witness's testimony that he was injured during the failed robbery attempt. The third incident, the California shoot-out, will be described by more than 1

---

[1] Defendant is correct that the proceeds were returned to him because, at the time, insufficient proof existed to forfeit the money. Nevertheless, the possession of such a large sum of money – an amount that happens to be the approximate price of a kilogram of cocaine – is highly probative of the charged offense.

witness to whom Becton described it or aspects of it, and it will also be substantiated by other evidence such as proof of the injury Becton sustained to his hand in the shooting. Significantly, all three of these incidents involve conduct undertaken by James Becton and his co-conspirators *directly in furtherance of the objective of the conspiracy*, namely, the acquisition and distribution of narcotics. As this Court has already ruled with respect to other anticipated testimony in this case,[2] such evidence is direct proof of the charged conspiracy and is admissible at trial.

    4. Defendant also opposes the introduction of evidence that James Becton, Willie Best, and other co-conspirators were involved in narcotics trafficking with each other in the early 1990s, and that before moving their operations to Fourth Street, S.E., members of the conspiracy engaged in the drug trade in other areas of Southeast Washington. (Def.'s Amended Opp. ¶¶ 9, 14). This evidence is admissible to show the formation of the conspiracy. As Chief Judge Lamberth has held, "[t]he fact that evidence 'precedes the date of the inception of the conspiracy charged in the indictment' does not preclude its admission." *United States v. Simmons*, 431 F. Supp.2d 38, 58 (D.D.C. 2006) (citing *United States v. Diaz*, 878 F.2d 608, 613-15 n.2 (2d Cir. 1989)). Moreover, "evidence of behavior antedating the period covered by the indictment is generally admissible as bearing on the existence and purpose of the conspiracy and the significance of later behavior." *Id.* Testimony from witnesses with first-hand knowledge that beginning in the early 1990s, James Becton, Christopher Becton, and others were involved in acquiring and distributing crack cocaine – albeit in quantities significantly smaller than those that would mark their conduct in later years – clearly bears on the existence and purpose of the

---

    [2] The Court previously denied defendant's motion in *limine* to exclude evidence that defendant James Becton shot at two people in the 4300 block of Fourth Street because of his stated belief that one of the victims was selling drugs in the area without his permission.

conspiracy. Similarly, testimony from those with first-hand knowledge that the defendants possessed weapons or robbed rival narcotics dealers in those early years is similarly relevant. (Def.'s Amended Opp. ¶ 12).

5. Defendant also seeks to preclude testimony about an incident in 1994 in which Willie Best accused Russell Ramseur of stealing a large quantity of crack cocaine, and shot him. (Def.'s Amended Opp. ¶ 10). The evidence will show that the motive for the shooting was common knowledge among members of the Becton-Best family at the time, and the shooting itself happened in a parking lot, in public and in view of a number of eyewitnesses. It is well-established that evidence is admissible that is "inextricably intertwined with and tells the stories of how relationships necessary to the establishment of the criminal enterprise began, developed, and operated within the conspiracy." *United States v. Gray*, 292 F. Supp. 71, 80 (D.D.C. 2003) (Lamberth, J.). Although security concerns counsel against revealing the identity of any government witnesses in this matter until absolutely necessary, the government can represent to the Court that one of the witnesses to the 1994 Russell Ramseur shooting later joined the narcotics conspiracy that is the subject of the indictment in the instant case, and that the events of that day shaped the witness's subsequent relationships with his co-conspirators and his eventual role in the conspiracy. Accordingly, testimony about the 1994 shooting ought to be admissible at trial.[3]

6. From approximately January 1995 to December 1999, defendant James Becton was incarcerated, first on murder charges and then while he served a sentence for weapons

---

[3] If the Court desires a more extensive proffer regarding the identity of the witness, the United States would respectfully request permission to make its proffer *ex parte* during the hearing on defendant's objections.

possession. Defendant was incarcerated again from approximately October 2003 to May 2005, when he was preventively detained for a non-fatal shooting and drug charges, followed by service of a two-year sentence for bail jumping. The final substantive paragraph of defendant's opposition appears to seek a ruling, *in limine*, to preclude reference to defendant James Becton's previous periods of incarceration (Def.'s Amended Opp. at ¶ 19). With respect to the first period of incarceration, the United States does not anticipate eliciting from any witness the fact that defendant was incarcerated during the period of 1995 to 1999, or the basis for such incarceration. (At most, a witness may testify that defendant was "not around" for a certain period of time). With respect to the second period of incarceration, however, the fact that defendant was incarcerated first at the D.C. Jail in 2003 and then at a federal prison in North Carolina beginning in 2004 will be inextricably intertwined with the evidence presented at trial. Witnesses will testify about how during defendant's incarceration, his co-conspirators rallied to his support by raising money for his defense lawyer. Witnesses also will testify about how during defendant's incarceration, he continued to direct the drug trafficking activities of co-conspirators. Specifically, on one occasion, while incarcerated, defendant directed one co-conspirator to supply another with a quantity of crack cocaine for re-distribution. On a separate occasion, defendant asked one co-conspirator to supply another co-conspirator with a quantity of heroin, so that the heroin could be delivered to the defendant in prison for further re-distribution. There will also be testimony about how defendant enlisted the aid of a correctional officer at the federal prison in North Carolina to smuggle in contraband, including a cellular telephone, so that defendant could keep in touch with his co-conspirators and direct certain events while incarcerated. Finally, defendant was incarcerated in North Carolina with one of his co-

conspirators in the instant indictment, namely, Tyrone Washington, and photographs taken in prison demonstrating their continuing association are relevant to the conspiracy charge.

      7.    At the present time, the United States does not intend to present evidence regarding the other specific events about which defendant objects (Def.'s Amended Opp. at ¶¶ 8, 13, 16). There will be substantial testimony, however, that during the course of the conspiracy the defendant enforced the conspiracy's control over the market for crack cocaine in the 4200 and 4300 blocks of Fourth Street, S.E., through violence and intimidation. Cooperating witnesses will testify that defendant and other co-conspirators would slap, beat, or threaten persons who tried to sell drugs in the area that had not been purchased from the conspiracy. Cooperating witnesses will also testify that defendant and other co-conspirators would use similar force, as well as more creative methods of intimidation, such as sicking pitbulls, on would-be drug purchasers who attempted to exercise individual judgment regarding from whom they chose to purchase their crack cocaine. Finally, cooperating witnesses will testify that defendant Christopher Becton was able to rob certain narcotics sellers and users in the area because of his affiliation with (but not necessarily at the direction of) the conspiracy. Such anecdotal evidence will depict the day-to-day operations of this narcotics conspiracy and is direct evidence of the case on trial. (*See* Notice of Intrinsic Evidence at 15-18).

WHEREFORE, the United States respectfully submits that defendant's objections to the Notice of Intrinsic Evidence should be overruled.

        Respectfully submitted,

        JEFFREY A. TAYLOR, Bar No. 794610
        United States Attorney


        _____/s/_____
        ARVIND K. LAL, Bar No. 489396


        _____/s/_____
        MATTHEW P. COHEN, Bar No. 469629
        Assistant United States Attorneys
        555 4th Street, N.W., Room 4118
        Washington, DC 20530
        (202) 514-7427